# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

MERCEXCHANGE, L.L.C.,

        Plaintiff,

v.                                   Civil Action No. 2:01cv736

eBAY, INC. and HALF.COM, INC.,

        Defendants.

## ORDER AND OPINION

Presently before the court are plaintiff's, MercExchange, L.L.C., renewed motion for entry of a permanent injunction and defendants', eBay, Inc. and Half.com, Inc., motion to stay the proceedings of both the '265 and '051 patent disputes; the court held oral argument on both motions.  For the reasons set out herein, the court **DENIES** plaintiff's motion for a permanent injunction, and **GRANTS** in part, and **DENIES** in part, defendants' motion to stay the proceedings.  With respect to the motion to stay, the court hereby **ORDERS** that the proceedings involving the '265 patent be **SEVERED** from those involving the '051 patent, and addressing such patent disputes separately, the court **GRANTS** defendants' motion to stay the '051 proceedings and **DENIES** defendants' motion to stay the '265 proceedings.

## I.  Procedural History

On August 6, 2003, subsequent to a jury verdict finding that eBay and Half.com (collectively "eBay") willfully infringed MercExchange's '265 and '176 patents, this court entered an order disposing of several post-trial motions, which included the denial of MercExchange's original motion for a permanent injunction.  MercExchange, L.L.C. v. eBay, Inc., 275 F. Supp. 2d 695 (E.D. Va. 2003).  On appeal, the Federal Circuit affirmed the damages award for the '265 patent, reversed the '176 damages, finding such patent invalid based upon

obviousness, and reversed the denial of MercExchange's injunction motion, indicating that injunctions should essentially issue as a matter of course in patent infringement actions upon a finding of validity and infringement; additionally, the Federal Circuit vacated this court's grant of summary judgment in favor of eBay on MercExchange's '051 patent. MercExchange, L.L.C. v. eBay, Inc., 401 F.3d 1323 (Fed Cir. 2005). Subsequent to the Federal Circuit's opinion, the Supreme Court granted certiorari only with respect to the issue involving the applicable standard in patent infringement cases when a prevailing patent holder seeks entry of a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837 (2006). The Supreme Court thereafter vacated the Federal Circuit's injunction ruling, establishing the "traditional" four-factor equitable test as the proper standard for the injunction calculus in all cases, including patent disputes. Id. Accordingly, the Court ordered that the '265 injunction dispute be remanded to this court so that it may apply "the traditional four-factor framework that governs the award of injunctive relief . . . in the first instance." Id. at 1841. During the time the appeal was pending before the Federal Circuit and the Supreme Court, the United States Patent and Trademark Office ("PTO") granted eBay's request to initiate reexamination proceedings on both the '265 and '051 patents; non-final PTO office actions in both reexaminations have since indicated that such patents are invalid as obvious, prompting eBay to file its motion to stay the proceedings.

As part of the process of determining whether an injunction shall issue, or whether the proceedings, including the injunction determination, shall be stayed, this court reopened the record to permit both plaintiff and defendants the opportunity to update the court on factual developments occurring over the past three years. MercExchange, L.L.C. v. eBay, Inc., 467 F. Supp. 2d 608 (E.D. Va. 2006). Although permitting additional discovery delayed the resolution of both pending motions, the court found such exercise necessary as there appeared to be significant post-trial factual developments, and the stale record prevented the court from conducting the analysis necessary to resolve either party's motion seeking prospective equitable relief. See Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001)

("A prospective injunction is entered only on the basis of <u>current</u>, ongoing conduct that threatens <u>future</u> harm.") (emphasis added); <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 819 (4th Cir. 1991) (reversing the grant of an injunction and remanding the case "without prejudice to the right of the plaintiff to premise its motion on new or changed circumstances"). Although this court found it necessary to reopen the record, the parties were repeatedly admonished that the court would not entertain attempts to re-litigate past issues nor recast previously established facts in a light more favorable to such party.  Thus, in applying the four-factor equitable test, this court will ignore eBay's assertions that it never willfully infringed the '265 patent as the jury's verdict, affirmed by the Federal Circuit, establishes that at the time of trial eBay was a willful infringer of plaintiff's valid and enforceable '265 patent.  Similarly, the court will ignore arguments advanced by MercExchange or its experts suggesting that MercExchange has always endeavored to develop the '265 patent and uphold its right to exclude as the court previously determined that MercExchange exhibited a "willingness to license its patents," a "lack of commercial activity in practicing the patents," and that MercExchange's "numerous comments to the media before, during, and after th[e] trial indicat[e] that it did not seek to enjoin eBay but rather sought appropriate damages for the infringement." <u>MercExchange</u>, 275 F. Supp. 2d at 712.

## II.  Factual Developments Subsequent to Trial

The primary factual developments occurring subsequent to trial that are relevant to the instant opinion are: (1) eBay requested that the PTO reexamine the patentability of MercExchange's '265 and '051 patents and after granting such request, the PTO issued non-final actions indicating that both patents are invalid due to prior art;[1] and (2) in 2004, MercExchange

---

[1] As discussed in more detail below, all claims of the '265 patent were twice rejected as obvious in non-final actions.  The '051 reexamination proceedings appear more complicated, as the PTO originally rejected all the claims as obvious, intending to make such action final; however, MercExchange's response to such proposed action both avoided issuance of a final action and temporarily doubled the number of claims in the '051 patent.  Although all the newly added claims were subsequently withdrawn, it now appears that a handful of the '051 patent's original claims may ultimately survive the initial reexamination; however, a second reexamination regarding the few surviving claims was recently granted by the PTO.

granted uBid, Inc. ("uBid"), an online auction and fixed price marketplace that competes with eBay for a portion of the relevant market, a non-exclusive license to its entire patent portfolio. Additionally, in 2006, on the heels of the Supreme Court's opinion remanding the injunction dispute, uBid considered selling a 25% interest in its company to MercExchange in return for an exclusive license to the '265 patent.[2]  Set forth below is a more thorough discussion of the facts regarding MercExchange's post-trial relationship with uBid.

uBid.com is an auction website offering items for sale both through traditional auction bidding and through a "buy-it-now" option purportedly covered by the '265 patent.  uBid launched its buy-it-now option in order to stay competitive with eBay; however, once uBid learned of the instant litigation, it voluntarily suspended use of such functionality (Merc. Suppl. Brief Ex.1, at 5).  In May 2004, subsequent to the jury verdict and this court's denial of an injunction, but prior to the Federal Circuit's opinion on appeal, uBid and MercExchange entered into an agreement granting uBid a non-exclusive license to MercExchange's patent portfolio of present and future patents (Merc. Suppl. Brief Ex.3).  The May 2004 license agreement called for a $150,000 fixed payment and a structured royalty to begin when uBid reached $500 million in annual qualified gross market sales (Merc. Suppl. Brief Ex.3).  uBid's CEO, Robert Tomlinson, indicated that uBid entered into such licensing agreement in part to avoid costly litigation (Merc. Suppl. Brief Ex.2, at 84-89).[3]  Furthermore, emails leading up to such agreement exchanged between Tomlinson and Tom Woolston of MercExchange, the inventor of the patents-in-suit, reveal that uBid chose to obtain the license in lieu of spending money "on a detailed legal opinion as to [the] patents and [their] impact on uBid" (eBay Suppl. Brief Ex.5). Tomlinson's emails indicate that $150,000 was "more than the legal review but better spent to

---

[2] A third relevant factual development is that eBay alleges that it designed around the '265 patent subsequent to trial and is no longer infringing; however, because the court does not have sufficient evidence before it to fully explore such contention, the instant opinion is not premised upon such purported design-around.

[3] The 30(b)(6) deposition of uBid was conducted through both uBid's CEO, Robert Tomlinson, and Executive Vice President of Merchandising, Timothy Takesue, each designated to respond to certain issues raised by eBay.

secure our relationship"; furthermore, Tomlinson stated that "in return" for a license to MercExchange's patents he would "work directly with [Woolston] and [his] group to secure [their] eBay position" and any other challenges in front of them (eBay Suppl. Brief Ex.5) (emphasis added). An email sent by Tomlinson over two years later confirms that avoidance of litigation was the major factor in uBid's decision to obtain a non-exclusive license; the August 2006 email stated: "As you know, we chose to license the patents as a cost effective way to limit any litigation at a very critical time in uBid's relaunch" (eBay Suppl. Brief Ex.23).[4] Such email again indicates that uBid had "not engaged our attornys [sic] currently or in the past for a legal opinion as to the merits of the patents" (eBay Suppl. Brief Ex.23).

In addition to the non-exclusive license obtained by uBid in 2004, beginning in May of 2006, in the immediate wake of the Supreme Court's opinion remanding the injunction determination, uBid and MercExchange conducted preliminary negotiations whereby uBid considered obtaining an exclusive license to MercExchange's '265 patent in exchange for a 25% equity stake in uBid (Merc. Suppl. Brief Ex.2, at 207-08, 299). uBid reports that it recognized the value in an exclusive sublicense because if uBid were the only website permitted to utilize the '265 patent, sellers desiring to list goods at a fixed price would be driven from eBay to uBid (Merc. Suppl. Brief Ex.2, at 211). Such concept, purportedly developed by uBid, never reached fruition due to significant uncertainty faced by uBid including both "valuation uncertainty" and "actual infringement uncertainty" (Merc. Suppl. Brief Ex.2, at 212). Such uncertainty was driven by not only the unresolved status of the injunction, but also concerns regarding whether eBay continued to infringe as well as questions surrounding the continuing validity of MercExchange's patents (Merc. Suppl. Brief Ex.2, at 212, 227). More specifically, uBid explained that "there is really not much one could build around [such] concept" until it was determined whether eBay designed around the patent as a successful design-around would

---

[4] Although during uBid's 30(b)(6) deposition Robert Tomlinson portrayed the fear of litigation as one of many factors motivating uBid to enter into the non-exclusive license agreement, the court finds Tomlinson's candid statement in his email indicating that the threat of litigation was the major factor to be more convincing.

prevent eBay from losing its current customers (Merc. Suppl. Brief Ex.2, at 212-13).  Likewise, uBid recognized the reality that if the PTO determined that the patents were invalid then uBid would "have Jack relative to what [it] would give away for 25 percent of [its] ownership" (Merc. Suppl. Brief Ex.2, at 225).

### III.  eBay's Motion to Stay the Proceedings

eBay's motion to stay seeks to stay the proceedings with respect to both the '265 patent and '051 patent pending the ongoing PTO reexaminations.  "It is well-settled law that a district court may exercise its discretion when ruling on a motion to stay proceedings pending reexamination of the patents-in-suit by the PTO."  NTP, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005).  Although the PTO has not yet issued a final office action in either pertinent reexamination, a ruling that would be appealable to the Board of Patent Appeals and Interferences (BPAI) and ultimately the Federal Circuit, the PTO has issued interim office actions in both reexaminations, twice indicating that all claims of the '265 patent are invalid as obvious and similarly finding nearly all claims of the '051 patent invalid over prior art.  As discussed in detail below, after exercising its discretion and balancing the equities, the court grants defendants' motion to stay the '051 proceedings and denies defendants' motion with respect to the '265 proceedings.  The court reaches differing conclusions regarding the two patents due to the vastly differing procedural postures of such discrete infringement disputes. Tellingly, unlike the alleged infringement of the '051 patent, which never reached a jury, after a five-and-a-half week jury trial, the '265 patent was deemed valid and infringed, and a $25 million damage award for such infringement was affirmed by the Federal Circuit and is now final.

A district court has broad discretion to grant or deny a stay pending PTO reexamination of the patents-in-suit and "is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze."  NTP, 397 F. Supp. 2d at 787; see Viskase Corp. v. American Nat. Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution

in view of the reexaminations."). Although a court is not obligated to stay an infringement case

based upon a parallel reexamination, it may opt to do so in order to avoid inconsistent results,

narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of

judicial resources, especially if the evidence suggests that the patents-in-suit will not survive

reexamination. See Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One

purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is

canceled) or to facilitate trial of that issue by providing the district court with the expert view of

the PTO (when a claim survives the reexamination proceeding)."); Patlex Corp. v. Mossinghoff,

758 F.2d 594, 602 (Fed. Cir. 1985) (explaining that PTO reexaminations can "settle validity

disputes more quickly and less expensively than the often protracted litigation involved in such

cases," can aid the trial court in making informed validity decisions, and will ultimately reinforce

investor confidence in the patent system by creating a broader opportunity for the PTO to review

doubtful patents); Medichem, S.A. v. Rolabo, S.L., 353 F.3d 928, 936 (Fed. Cir. 2003)

(recognizing the district court's power to stay proceedings in a patent interference dispute

pending the BPAI's ruling as doing so "may permit the district court to avoid a needless

duplication of efforts"). Additionally, in considering the propriety of a stay, district courts

generally consider the stage of discovery, whether a trial date has been set, and whether a stay

will unduly prejudice the non-moving party. Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404,

406 (W.D.N.Y. 1999). A review of relevant caselaw indicates that district courts routinely grant

pre-trial stays when PTO reexaminations are underway and evidence suggests that the patents-in-

suit may not survive reexamination. See, e.g., Bausch & Lomb Inc. v. Alcon Laboratories, Inc.,

914 F. Supp. 951, 952-53 (W.D.N.Y. 1996) (staying the case prior to trial as a reexamination

was underway, there was "a flurry of activity at the PTO . . . which appears to implicate the

validity of the '607 patent," and staying the matter would avoid the needless waste of "time,

resources, and significant efforts," avoid the possibility of inconsistent results, and potentially

eliminate the need for trial); Lentek Int'l, Inc. v. Sharper Image Corp., 169 F. Supp. 2d 1360,

1362 (M.D. Fla. 2001) ("As several courts, [including the Federal Circuit] have noted, the

sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office.").

### A.  '265 patent

In seeking a stay of the '265 patent proceedings, eBay relies primarily on <u>Standard Havens Products, Inc. v. Gencor Indus.</u>, 996 F.2d 1236 (Fed. Cir. 1993) (unpublished) (<u>Standard Havens III</u>), a one-page unpublished Federal Circuit opinion reversing the district court's denial of a stay subsequent to a completed PTO reexamination.  Although eBay urges this court to stay the '265 proceedings based upon what eBay characterizes as facts "remarkably similar" to those of <u>Standard Havens</u>, there are several key differences which lead the court to conclude that a stay is not warranted.  First, in <u>Standard Havens</u>, the PTO reexamination was completed as not only had the patent examiner issued a final action rejecting the patent at issue, but the BPAI affirmed the majority of the grounds on which the patent examiner relied in issuing such rejection.  <u>Standard Havens Products, Inc. v. Gencor Indus.</u>, 953 F.2d 1360, 1366 (Fed. Cir. 1991) (<u>Standard Havens I</u>).  At the time the district court denied the defendant's motion to stay the proceedings, the BPAI decision was on appeal to the District Court for the District of Columbia, and thus, two different district courts were involved in the dispute at the same time.  <u>Standard Havens Products, Inc. v. Gencor Indus.</u>, 810 F. Supp. 1072, 1073 (W.D. Mo. 1993) (<u>Standard Havens II</u>).  In contrast, here, the PTO has not yet issued a final action, and even if it had, an administrative appeal to the BPAI could take years.[5]  Thus, unlike <u>Standard Havens</u> where two district courts were simultaneously involved, here, eBay seeks a stay of the district court's <u>post-trial</u> proceedings pending a potentially lengthy <u>administrative</u> process of which the initial phase has not yet been finalized; at such a late stage in the trial proceedings, the court does not

---

[5] 37 C.F.R. §§ 41.31-41.54 reveals that the BPAI appeal process may be lengthy as time is allotted for: noticing the appeal, filing an appeal brief, issuance of the examiner's answer, filing a reply brief to the examiner's answer, and a decision by the Board.  Furthermore, there is the potential for an oral hearing, a rehearing, and withdrawal of the final rejection in order to reopen prosecution; extensions of the deadlines can also be granted if there is "sufficient cause."

favorably view further delay predicated upon an administrative process of indeterminate length. Second, unlike the instant matter where there is a final damages award affirmed by the Federal Circuit, in Standard Havens the damages remained unresolved as the Federal Circuit vacated the jury's damage calculation and, prior to recalculation of damages, the PTO reexamination proceedings concluded prompting the defendant's motion to stay.  Standard Havens II, 810 F. Supp. at 1073.  The final and affirmed damages award in this matter further illustrates the advanced stage of the '265 litigation in comparison to the PTO reexamination which has yet to yield a final office action let alone a BPAI ruling.  Third, considering the weight to afford Standard Havens, the Federal Circuit's opinion is unpublished, offers very limited analysis, and appears to be premised in part upon the district court "incorrectly conclud[ing] that the reexamination decision can have no effect on th[e] infringement suit."  Standard Havens III, 996 F.2d 1236, at *1.  In contrast, here, the court recognizes the impact of a final PTO finding of invalidity, affirmed by the BPAI and the Federal Circuit; however, due to the remoteness of such potential outcome and the advanced stage of the '265 proceedings in this court, the court opts not to subvert itself to an administrative process still in its initial stages when the court has already conducted a lengthy trial, the jury returned a verdict and damage award, and such verdict and damage award were affirmed by the Federal Circuit.  See Viskase, 261 F.3d at 1328 ("[A] district] court is not required to stay judicial resolution in view of [PTO] reexaminations.").

In addition to the differences between the instant facts and those of Standard Havens, the court has considered the timing of eBay's request for reexamination; namely, that reexamination was sought by eBay after the jury reached a verdict on the '265 patent in favor of MercExchange.  Thus, even in light of the non-final PTO actions indicating that all claims of the '265 patent are invalid as obvious, the court is not inclined to stay the post-trial proceedings as doing so would create the incentive for adjudicated infringers to seek to circumvent an otherwise enforceable jury verdict by utilizing an alternate forum.[6]  See Hoechst Celanese Corp. v. BP

---

[6] The court rejects eBay's suggestion that it did not possess the resources to seek reexamination prior to trial but finds credible eBay's assertion that it did not seek reexamination at an earlier date because eBay always thought it would prevail at trial (eBay Mo. to Stay 22-25).

Chemicals Ltd., 78 F.3d 1575, 1584 (Fed. Cir. 1996) (recognizing that it "was fully within the court's discretion" to deny a pre-trial motion to stay the proceedings based a reexamination request filed six months prior to trial "lest the trial schedule be manipulated or unduly delayed"). Furthermore, as several cases cited above establish, the primary benefits of the PTO reexamination process are that it can narrow the issues for trial, provide the court guidance, and avoid the waste of significant time and resources if the patents-in-suit were in fact improvidently granted; post-verdict reexaminations plainly fail to provide such benefits and although the PTO may ultimately "correct" a trial court by determining that the patents-in-suit are invalid, this court need not subvert itself to the administrative timetable based upon such possibility. As a result of the factors discussed above, the court declines to stay the '265 proceedings based upon the PTO reexamination, initiated subsequent to trial, as the '265 infringement suit has already been tried by a jury and a final verdict and damage award has been affirmed by the Federal Circuit.

### B. '051 patent

The analysis relevant to eBay's motion seeking a stay of the '051 patent proceedings is markedly different from that of the '265 patent, primarily based upon the stage of the litigation in comparison to the stage of the PTO reexaminations. Such clear difference prompted MercExchange to both concede in its briefs that the '051 patent creates a "closer question" than the '265 patent and concede at oral argument that MercExchange was unlikely to prevail on such issue. Tellingly, unlike the advanced stage of the litigation involving the '265 patent, the '051 patent never reached the jury as prior to the 2003 infringement trial on the '265 and '176 patents, the court granted summary judgment in favor of eBay on the '051 patent, finding such patent unenforceable for failing to provide an adequate written description. This court's grant of summary judgment was thereafter reversed by the Federal Circuit, but as five years have passed

---

Such admission does not establish that eBay's request was dilatory or that its motivations are suspect; however, it reinforces the court's position that eBay is an unsuccessful litigant seeking a second bite at the apple through an administrative process, and although eBay has every right to do so, this court will not halt all post-trial proceedings as such lengthy process unfolds.

since discovery was conducted on such dispute, it does not appear that the parties are presently

prepared for trial. Likewise, the fact that a large portion of the trial evidence will involve experts

further indicates that both plaintiff and defendants will need to expend significant additional time

and resources to prepare for trial. Furthermore, unlike the '265 patent, for which eBay requested

reexamination subsequent to trial and subsequent to an unfavorable verdict, reexamination of the

'051 patent was requested prior to trial and after a favorable summary judgment ruling; thus, no

concerns regarding manipulation of the reexamination process exist. See Everything For

Love.com, Inc. v. Tender Loving Things, Inc., No. CIV 02-2605-PHX-EHC, 2006 WL 2091706,

at *4 (D. Ariz. July 21, 2006) (unpublished) (indicating that although the "case is mature" in that

discovery was complete and the case was originally scheduled for trial approximately one year

prior, a stay was warranted because the defendant had not "abused the reexamination process in

an attempt to delay trial proceedings" and a stay would avoid inconsistent results and allow the

court to benefit from the PTO's expertise).

        A review of prior district court cases reveals that courts frequently justify imposing a stay

based upon the statute requiring that PTO reexaminations be "conducted with special dispatch."

35 U.S.C. § 305. This court, however, affords minimal weight to such statutory requirement as

the undeniable reality is that even if the PTO promptly responds to all filings, the reexamination

process, similar to patent litigation itself, can be long and drawn out; the gravity of the stakes in

most disputes results in further extensions of the process as appeals to both the BPAI and Federal

Circuit are probable in the event of a ruling unfavorable to the patent holder.[7] See, e.g., In re

American Academy of Science Tech Center, 367 F.3d 1359, 1362-63 (Fed. Cir. 2004) (affirming

the BPAI's claim construction ten years after the request for PTO reexamination was filed).

Notwithstanding such reality, this court endeavors to discover the truth, and to do so in a

reasonable and equitable manner without the needless waste of the court's, or the litigants' time

and resources. Here, significant time and resources would undoubtedly be poured into both trial

---

[7] Although appeals to the BPAI and Federal Circuit may further lengthen the stay period, such discretionary appeals may only be sought by the patent holder; thus, any additional delay due to an appeal to the BPAI or Federal Circuit will be a delay initiated by MercExchange.

preparation and the '051 trial itself as: (1) prior discovery/expert reports may be stale; (2) the stakes are high and the history of this case unquestionably indicates that a trial on the '051 patent would be contentious, complex, and lengthy; and (3) eBay's preliminary evidence regarding its purported design-around of the '265 patent suggests that eBay also believes to have designed around the '051 patent and introduction of such issue will increase both the complexity of the '051 litigation and the extent of discovery necessary prior to trial.  Accordingly, just as there is no escaping the reality that the PTO process can be lengthy, there is no escaping the reality that the '051 trial will be a battle of experts that lasts weeks, if not months, and costs the litigants millions of dollars in legal fees and expenses.  Furthermore, the potentially lengthy PTO reexamination process, which is already underway, will not be stayed or have issues narrowed based upon a concurrent trial; rather, two independent complex resolution processes will concurrently consume federal resources while endeavoring to answer the essentially the same question.  Thus, even though this court "is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations," NTP, 397 F. Supp. 2d at 787, the fact that the court has the ability to disregard the ongoing reexaminations and proceed to trial does equate with the conclusion that the prudent course is to in fact charge forward.

On the instant facts, charging ahead with a lengthy and complex trial when there are significant questions regarding the patentability of plaintiff's invention does not appear prudent. Tellingly, the PTO only grants a patent reexamination after objectively finding "that a substantial new question of patentability" exists, 35 U.S.C. § 304, and here, not only has the PTO granted a reexamination request, but it has previously issued two interim actions rejecting all claims of the '051 patent, the second of such actions initially intended to be final (eBay Mo. to Stay Ex.14, 22).  Subsequent to the proposed final action, MercExchange filed a petition requesting entry of a Supplemental Amendment, adding fifty-two additional claims to the '051 patent thereby doubling the number of original claims (eBay Mo. to Stay Ex.22).  Thereafter, the PTO issued a non-final action rejecting the vast majority of the original and new claims, and although a small number claims were apparently recognized as patentable, it appears that the PTO rejected all one

12

hundred and four claims as indefinite (eBay Mo. to Stay Reply Ex.28).[8]  Subsequent to such

interim office action, MercExchange withdrew all fifty-two of the newly added claims, once

again relying upon the original fifty-two claims which were twice rejected prior to

MercExchange's supplemental amendment (eBay Suppl. Brief 18-20).  The court lacks detailed

information regarding many developments in the PTO reexamination of the '051 patent as the ex

parte process is not transparent to this court;[9] however, what is clear to this court is that

MercExchange is currently in the trenches fighting for the continued survival of its '051 patent.

Because such fight has been underway for over three years, is being waged in the most

appropriate forum, and the PTO will ultimately provide an "expert view" on the validity of the

'051 patent that will streamline triable issues, or eliminate the need for trial altogether, a stay of

this matter is appropriate.  Gould, 705 F.2d at 1342.[10]

### IV.  MercExchange's Renewed Motion for a Permanent Injunction

Following the United States Supreme Court's decision in eBay Inc. v. MercExchange,

L.L.C., 126 S. Ct. 1837 (2006), this court is required to apply "the four-factor test historically

employed by courts of equity" and determine in the first instance whether a permanent injunction

---

[8] The exhibit reflecting such office action submitted by eBay is incomplete, making it difficult for the court to discern the PTO's conclusion.

[9] It appears that five claims of the '051 patent, claims 13, 33-35 and 52, may ultimately "survive reexamination"; however, based upon a document submitted by eBay subsequent to oral argument, on June 28, 2007, the PTO granted a second request for reexamination regarding the five remaining claims.  Although such development has no major impact on this court's decision to stay the matter, it is referenced both in the interest of completeness and to illustrate the complexity of this constantly evolving dispute.

[10] As discussed in more detail in the injunction analysis that follows, the recent Supreme Court decision in KSR Int'l. Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007) increases the court's wariness of proceeding to trial on the '051 patent as KSR suggests that both the '265 and '051 patents may be invalid as obvious.  KSR, issued approximately three months ago, highlights "the need for caution in granting a patent based on the combination of elements found in the prior art" because such a combination "is likely to be obvious when it does no more than yield predictable results."  Id. at 1739.  The timing of KSR is relevant in that it was issued subsequent to PTO actions finding that the combination of the elements constituting the '051 patent were invalid as obvious.  Tellingly, if prior art rendered the '051 patent obvious under the pre-KSR standard of obviousness, it appears more likely to be deemed obvious under the post-KSR standard which makes it more difficult to obtain, or defend, a business method patent comprising a combination of prior art that does no more than yield predictable results.

shall issue following the affirmed jury verdict concluding that eBay willfully infringed MercExchange's '265 patent.  Id. at 1838.  Applying such test, there are no special assumptions unique to a patent case; rather, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts" and in all cases "such discretion must be exercised consistent with traditional principles of equity."  Id. at 1841.  Thus, in order to obtain a permanent injunction in any case, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  Id. at 1839 (emphasis added).  This court denied plaintiff's original motion for a permanent injunction based upon application of such four-factor test, MercExchange, L.L.C. v. eBay, Inc., 275 F. Supp. 2d 695 (E.D. Va. 2003); however, the Supreme Court, determined that this court's prior analysis could be read to bar injunctive relief "in a broad swath of cases," and instructed that the matter be returned to this court to "apply the framework in the first instance."  eBay, 126 S. Ct. at 1840-41.  Although, as set forth below, this court reaches the same ultimate conclusion as its prior opinion, the analysis, conducted in the first instance, is guided by the direction provided by the Supreme Court as well as the facts specific to this case.

### A.  Irreparable Harm Presumption

Prior to applying the facts of the instant matter to the four-factor test, the court must consider whether a presumption of irreparable harm upon a finding of validity and infringement survives the Supreme Court's opinion remanding this case.  Although the parties did not perform extensive briefing on such issue and the Supreme Court's opinion does not squarely address it, a review of relevant caselaw, as well as the language of the Supreme Court's decision, supports defendants' position that such presumption no longer exists.  See, z4 Technologies, Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006) (concluding that the language in the Supreme Court's eBay opinion "does not imply a presumption, but places the burden of proving

irreparable injury on the plaintiff"); <u>Paice LLC v. Toyota Motor Corp.</u>, No. 2:04-CV-211-DF, 2006 WL 2385139, at *4 (E.D. Tex. Aug. 16, 2006) (unpublished) ("The <u>eBay</u> decision demonstrates that no presumption of irreparable harm should automatically follow from a finding of infringement."); <u>eBay</u>, 126 S. Ct. at 1840 (rejecting the application of categorical rules as inconsistent with traditional equitable principles); <u>see also</u> <u>Amoco Production Co. v. Village of Gambell, AK</u>, 480 U.S. 531, 545 (1987) (rejecting the Ninth Circuit's application of a <u>presumption</u> of irreparable harm in a lawsuit seeking an injunction based upon the defendant's failure to evaluate the environmental impact of selling oil and gas leases on federal lands because such presumption is "contrary to traditional equitable principles"); <u>but cf.</u> <u>Christiana Indus. v. Empire Electronics, Inc.</u>, 443 F. Supp. 2d 870, 884 (E.D. Mich. 2006) (rejecting the defendant's claim that "the Supreme Court eliminated the presumption of irreparable harm for <u>preliminary</u> injunctions upon a showing of validity and infringement") (emphasis added). Although a presumption of irreparable harm is inconsistent with the Supreme Court's instruction that traditional equitable principles require <u>the plaintiff</u> to demonstrate that it has suffered an irreparable injury, the court is not blind to the reality that the nature of the right protected by a patent, the right to exclude, will frequently result in a plaintiff successfully establishing irreparable harm in the wake of establishing validity and infringement.  <u>See</u> <u>eBay</u>, 126 S. Ct. at 1841 (Roberts, C.J., concurring) (indicating that it is unsurprising that injunctive relief has been granted in the "vast majority" of patent cases since the early 19th century "given the difficulty of protecting a right to <u>exclude</u> through monetary remedies").  However, putting <u>the onus on the plaintiff</u> to prove irreparable harm is much more than an idle exercise as numerous case specific facts may weigh against the issuance of an injunction notwithstanding the nature of the patent holder's right.  <u>See</u> <u>id.</u> at 1841 (unanimously recognizing that the Federal Circuit erred in its categorical grant of injunctive relief upon a finding of validity and infringement).  Thus, even though an affirmed jury verdict establishes that eBay is a willful infringer of plaintiff's '265 patent, a permanent injunction shall only issue if <u>plaintiff carries its burden</u> of establishing that, based on traditional equitable principles, the case specific facts warrant entry of an injunction.

## B. The Four-Factor Test

## 1. Irreparable Harm[11]

Applying the case specific facts to the first factor of the four-factor test, the court concludes that MercExchange has not established irreparable harm and that the first factor weighs against entry of an injunction. Such conclusion was far from obvious based upon the unique facts of this case as well as the litigants' well-crafted arguments; however, even in light of MercExchange's post-trial relationship with uBid, the court concludes both that MercExchange has acted inconsistently with defending its right to exclude and that it has failed to establish why its harm is irreparable. The court recognizes that upon cursory review, MercExchange's post-trial relationship with uBid suggests that MercExchange may have suffered an irreparable injury; however, a careful examination of the facts surrounding such relationship reveals that such harm is compensable in monetary damages as MercExchange has continued to follow a consistent course of licensing its patents to market participants and is plainly willing to accept royalties for

future utilization of the patent. Additionally, the evidence indicates that MercExchange's post-remand relationship with uBid failed for reasons other than the lack of an injunction and the timing of such relationship suggests that it was just as likely a litigation tactic as it was a legitimate attempt to develop MercExchange's '265 patent. Furthermore, not only has MercExchange consistently sought royalties from internet companies interested in utilizing its patents, including eBay, and publicly announced its willingness to license its patents to eBay before, during, and after trial, but it failed to establish that an injunction is necessary to protect its brand name, market share, reputation, goodwill, or future research and development opportunities. In contrast to such factors weighing in eBay's favor, eBay's status as an apparent market monopolist that, at least in the past, was a willful infringer of MercExchange's '265 patent weighs in MercExchange's favor; however, eBay's market dominance does not alter the

---

[11] The irreparable harm inquiry and remedy at law inquiry are essentially two sides of the same coin; however, the court will address them separately in order to conform with the four-factor test as outlined by the Supreme Court.

reality that MercExchange has not set forth sufficient proof to establish that its harm is irreparable.  See Praxair, Inc. v. ATMI, Inc., 479 F. Supp. 2d 440, 443-44 (D. Del. 2007) (recognizing that although the "quantum of evidence required [to prove irreparable harm] is relatively unclear," the plaintiff had not met its burden by merely asserting that it directly competes with the infringer and will "likely lose additional market share, profits, and goodwill").  Accordingly, the evidence before the court reveals that eBay's infringement of the '265 patent resulted in substantial harm to MercExchange; however, MercExchange has failed to carry its burden to establish that such harm is irreparable and that money damages are an insufficient remedy.  See Paice, 2006 WL 2385139, at *5 n.3 (recognizing that although "monetary relief could result in lower licensing rates than Plaintiff would desire," whereas an injunction would give plaintiff "a more impressive bargaining tool," such considerations "do[] not replace the four-factor test that must be satisfied for equitable relief").  MercExchange has followed a consistent course of seeking to maximize the money it can obtain from licensing its patents to market participants allegedly utilizing such patents; a substantial damages award against eBay, apparently the primary infringer on MercExchange's '265 patent, will accomplish precisely such goal.

The court's determination that MercExchange fails to establish irreparable harm is based upon the facts specific to this case and not broad classifications or categorical exclusions of certain types of patent holders.  Turning to such facts, first, as noted above and in this court's previous order denying an injunction, prior to trial MercExchange exhibited a "lack of commercial activity in practicing the [relevant] patents" and instead exhibited a "willingness to license its patents."  MercExchange, 275 F. Supp. 2d at 712.  After being updated on post-trial developments, it is plain to the court that MercExchange failed to deviate from its prior course of conduct in the wake of the favorable jury verdict as, approximately one year after trial, MercExchange once again exhibited its willingness to freely license its patents, providing uBid a non-exclusive license to MercExchange's entire patent portfolio, including both current and pending patents.  In return for such non-exclusive license, MercExchange received a flat fee of

$150,000 and a potential future royalty stream tied to uBid's gross market sales; uBid's current gross market sales fail to approach the threshold required for royalty payments.  Although MercExchange's consistent practice of licensing, rather than developing, its patents in no way acts to exclude MercExchange, or similarly situated patent holders, from the opportunity to obtain a permanent injunction, it is one factor that this court must consider in weighing the equities.  Such factor is considered not because the court endeavors to "writ[e] on an entirely clean slate," eBay, 126 S. Ct. at 1841 (Roberts, C.J., concurring); but rather, taking a page from history, it is apparent that the Federal Circuit has repeatedly recognized that "the lack of commercial activity by the patentee is a significant factor in the calculus" of whether the patentee will suffer irreparable harm absent an injunction.  High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1556 (Fed. Cir. 1995) (emphasis added); see Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996) (recognizing three types of evidence sufficient to counter a presumption of irreparable harm including evidence that the movants "have engaged in a pattern of granting licenses under the patent"); T.J. Smith and Nephew Ltd. v. Consolidated Medical Equip., Inc., 821 F.2d 646, 648 (Fed. Cir. 1987) (recognizing that an established history of granting licenses is "incompatible with . . . the right to exclude").  Likewise, although the Supreme Court rejected analysis implying that a categorical exclusion prevented injunctions from issuing if a patent holder did not practice its patents and existed only to license them, the Court in no way suggested that such facts could not be considered as part of the calculus in weighing the traditional equitable factors.  eBay, 126 S. Ct. at 1840.  Thus, MercExchange's lack of commercial activity and pattern of granting licenses to market participants that were knowingly or unwittingly practicing its patents does not eliminate MercExchange's ability to establish irreparable harm, but it weighs against the need for an equitable remedy as it evidences MercExchange's willingness to forgo its right to exclude in return for money.  See, e.g., Ina Steiner, eBay-Contested MercExchange Patents are on the Block, Auctionbytes-NewsFlash, May 30, 2003, http://www.auctionbytes.com/cab/abn/y03/m05/i30/s01 (hereinafter "Steiner, Patents are on the

18

Block") ("[I]t is not our goal to enforce these patents, we want to sell off our Intellectual

Property rights.") (quoting Thomas Woolston, MercExchange's president and inventor of the

'265 patent); see also Polymer Tech., 103 F.3d at 975 (Fed. Cir. 1996) (indicating that

irreparable harm is clearly negated by a finding that "the patentee was willing to forgo its right to

exclude by licensing the patent").  Tellingly, here, even as MercExchange attempts to convince

the court of its desire to defend its right to exclude, MercExchange's website appears to offer

MercExchange's technology for sale to internet businesses.[12]

Returning to the Supreme Court's opinion remanding this case, the Court recognized the

utility of self-made inventors or university researchers opting to enter into licensing agreements

in lieu of raising what at times may be a prohibitive amount of financing necessary to develop

their products themselves.  This court recognizes and concurs with such utility and further

recognizes that a patent holder's decision to establish a licensing program does not negate the

possibility that such patent holder will suffer damage to its goodwill, reputation, research and

development opportunities, or ability to bring a unique product to market.  However, the

majority of the utility achieved by such licensing programs results from the fact that patent

holders are still seeking to develop their patent, they are just opting to do so in partnership with

others.  In contrast, here, MercExchange's modus operandi appears to be to seek out companies

that are already market participants that are infringing, or potentially infringing, on

MercExchange's patents and negotiate to maximize the value of a license, entered into as a

settlement to, or avoidance of, litigation.  Such consistent course of litigating or threatening

litigation to obtain money damages by a company of two employees, the inventor of the patents a

---

[12] The "Solutions" page on MercExchange's website indicates that "MercExchange provides custom solutions for e-commerce applications with a special focus on patented innovations" and that interested parties should "Contact us for a discussion of how we can put the MercExchange solutions to work for your e-commerce site." http://www.mercexchange.com/solutions.htm.  Likewise, MercExchange's "Licensed" page provides the logos for, and links to, the companies to which MercExchange has granted licenses, including Autotrader, ReturnBuy, GoTo.com (now Overture/Yahoo Search Marketing) and uBid. The evidence before the court reveals that none of these companies sought out MercExchange's "custom solutions for e-commerce applications" but instead obtained licenses as a result of litigation or the threat of litigation.

former patent attorney, indicates that MercExchange has utilized its patents as a sword to extract money rather than as a shield to protect its right to exclude or its market-share, reputation, goodwill, or name recognition, as MercExchange appears to possess none of these.  It is therefore unsurprising that, in light of eBay's dominant position in the online auction market, MercExchange has both initiated litigation against eBay and, as discussed below, exhibited its willingness to license its patents to eBay if the total dollars negotiated are acceptable to MercExchange.  The court therefore recognizes factual distinctions between MercExchange and the typical small inventor or researcher who opts to utilize outside licensees to help develop its patents.

Second, and likewise differentiating MercExchange from patent holders who do not practice their patents but nonetheless seek to defend their right to exclude, MercExchange's public and private actions indicate its desire to obtain royalties from eBay.  Turning to the public actions, although MercExchange utilized the courts to redress eBay's infringement, MercExchange and its attorneys, both before and subsequent to eBay being adjudicated a willful infringer, publicly expressed MercExchange's willingness to license its patents to eBay.  See, e.g., Steiner, Patents are on the Block ("I always thought the eBay community was the natural home for the patents.") (quoting Thomas Woolston); Troy Wolverton, Patent Suit Could Sting eBay, CNET News.com, Sept. 5, 2002, http://news.com.com/2100-1017-956638.html ("We are seeking reasonable royalties as permitted under the patent laws.  It's not our goal to put eBay out of business.  It's our goal to provide just compensation for the patent owner.") (quoting MercExchange's counsel); see also Odetics, Inc. v. Storage Technology Corp., 14 F. Supp. 2d 785, 797 (E.D. Va. 1998) (rejecting one of the defendant's arguments against entry of an injunction as inconsistent with a press release issued by such defendant the same day the jury returned a verdict).  Considering the private actions, as recognized by both this court and the United States Supreme Court, prior to commencing the instant litigation, MercExchange and eBay entered into negotiations regarding eBay's licensing/acquisition of MercExchange's patent portfolio.  See eBay, 126 S. Ct. at 1839 ("MercExchange sought to license its patent to eBay and

Half.com, as it had previously done with other companies, but the parties failed to reach an agreement.").  Although the parties dispute the content of such negotiations as well as the reason for their breakdown, the fact that they occurred lends further support to Mr. Woolston's claim that he thought eBay was the "natural home" for the relevant patents and detracts from MercExchange's present claim that it will be irreparably harmed if eBay is not enjoined from practicing the '265 patent.  Again endeavoring to draw from prior precedent rather than writing on a clean slate, the Federal Circuit has held that offering a license to the defendant makes it "clear that [a plaintiff] is willing to forgo its patent rights for compensation . . . [and] that any injury suffered by [such plaintiff] would be compensable in damages assessed as part of the final judgment in the case."  High Tech Medical, 49 F.3d at 1557.  Recognizing the Supreme Court's admonishment to avoid categorical rules, although this court does not conclude that offering a license to the defendant automatically precludes plaintiff from thereafter obtaining an injunction, such fact plainly weighs against a finding of irreparable harm as it illustrates the patent holder's willingness to forgo his right to exclude.

Third, although MercExchange filed suit against eBay in September of 2001, alleging that both eBay's online auctions and eBay's fixed price buy-it-now option were infringing upon patents held by MercExchange, MercExchange never sought a preliminary injunction against eBay.  Such factor, similar to those discussed above and below, is plainly not dispositive; however, on these facts, it is yet another factor in the calculus indicating both that MercExchange is not being irreparably harmed by eBay's infringement and that money damages are adequate.  See PGBA, LLC v. United States, 389 F.3d 1219, 1229-31 (Fed. Cir. 2004) (finding no error of law when the lower court considered, as one of the factors weighing against injunctive relief, the fact that plaintiff failed to pursue a preliminary injunction); T.J. Smith, 821 F.2d at 648 (recognizing that delay in seeking a preliminary injunction is incompatible with a patent holder's right to exclude).  Although numerous factors can impact a plaintiff's decision to forgo seeking a preliminary injunction and such injunction has different prerequisites and serves different purposes than a permanent injunction, on these facts, MercExchange's decision not to

seek a preliminary injunction is consistent with its strategy of pursuing market participants to

exact licenses for infringement or alleged infringement.[13]  Plaintiff's decision not to pursue a

preliminary injunction is likewise consistent with plaintiff's stated desire of obtaining reasonable

royalties both because: (1) true to its word, MercExchange did not seek to shut down eBay by

seeking a preliminary injunction; and (2) enjoining eBay from conducting infringing sales during

the pendency of litigation would reduce the royalties recovered by MercExchange both

immediately and thereafter.  Thus, numerous facts, including MercExchange's own statements,

indicate that here, MercExchange's failure to seek a preliminary injunction was impacted by its

willingness to accept a royalty for its patents as if MercExchange's true goal was to defend its

right to exclude, it would likely have at least <u>attempted</u> to stop eBay, the purported "market

monopolist," from further improving its foothold on the market during the lengthy litigation

period.[14]

 Fourth, the '265 patent is both a business method patent and a patent which appears to

rely upon a unique combination of non-unique elements present in prior art, and although such

patent is presently valid and enforceable, the nature of the patent causes the court pause because,

as previously recognized by this court, "there is a growing concern over the issuance of

---

[13] The timing of the instant litigation, filed in September of 2001, in relation to MercExchange's October 1999 and January 2000 agreements with Aden Enterprises planning a suit against eBay, discussed infra note 18, suggests that MercExchange's business plan was to generate licensing income by monitoring market participants, waiting until infringement occurred, and then threaten to file, or actually file a lawsuit.  If, in the alternative, eBay was already infringing in late 1999 and MercExchange was not lying in wait for infringement to begin, but delayed filing suit for nearly two years for other reasons, then such significant delay in initiating litigation provides substantial evidence that it was not being irreparably harmed by eBay's infringement.  <u>See</u> <u>Polymer Tech.</u>, 103 F.3d at 974 (finding that a delay in bringing an infringement suit "negates the idea of irreparability").

[14] Although the court agrees with MercExchange that there are several reasons not to rely upon a plaintiff's failure to seek a preliminary injunction when conducting the four-factor equitable calculus, <u>on these facts</u>, such failure is relevant as MercExchange attempts to utilize eBay's status as a market monopolist as evidence of irreparable harm.  Furthermore, MercExchange previously took a position inconsistent with its present claim that it is being irreparably harmed, indicating that it did not seek to shut down eBay, but merely wanted to obtain a reasonably royalty and sell off its intellectual property rights.  Accordingly, here, the failure to seek a preliminary injunction is in line with MercExchange's prior statements and demonstrates a lack of irreparable harm as MercExchange was willing to permit eBay's infringement and dominance to continue, if not increase, during the pendency of the instant trial.

business-method patents which forced the PTO to implement a second level review policy."

MercExchange, 275 F. Supp. 2d at 713.  Although patent holders of valid business method

patents, like any other patent holders, are certainly able to obtain an injunction if the application

of the case specific facts to the four-factor test reveals that equitable relief is warranted, the

nature of such patents may be considered by the court when balancing the equities.  See eBay,

126 S. Ct. at 1842 (Kennedy, J., concurring) (recognizing both that "trial courts should bear in

mind . . . the nature of the patent being enforced" and that the "potential vagueness and suspect

validity of some [business method patents] may affect the calculus under the four-factor test").

Here, not only was the '265 patent never subject to a second level review, but the PTO twice

rejected all claims of the '265 patent; when crafting prospective equitable relief the court cannot

ignore such realities.  Additionally, although in eBay only a four member panel recognized the

"suspect validity" of some business method patents, in KSR Int'l. Co. v. Teleflex Inc., the

Supreme Court unanimously highlighted "the need for caution in granting a patent based on the

combination of elements found in the prior art" because such a combination "is likely to be

obvious when it does no more than yield predictable results."  KSR, 127 S. Ct. 1727, 1739

(2007).  The KSR opinion rejected the rigid manner in which the Federal Circuit applies the

"teaching, suggestion, or motivation" ("TSM") test for obviousness, explaining:

> The flaws in the analysis of the Court of Appeals relate for the most part to the
> court's narrow conception of the obviousness inquiry reflected in its application
> of the TSM test.  In determining whether the subject matter of a patent claim is
> obvious, neither the particular motivation nor the avowed purpose of the patentee
> controls.  What matters is the objective reach of the claim.  If the claim extends to
> what is obvious, it is invalid under § 103.  One of the ways in which a patent's
> subject matter can be proved obvious is by noting that there existed at the time of
> invention a known problem for which there was an obvious solution encompassed
> by the patent's claims.

Id. at 1741-42.  Thus, "if a technique has been used to improve one device, and a person of

ordinary skill in the art would recognize that it would improve similar devices in the same way,

using the technique is obvious unless its actual application is beyond his or her skill."  Id. at

1740.  Applied to the instant facts, the KSR opinion reduces the likelihood that the '265 patent

will survive reexamination as the PTO's prior non-final actions were issued prior to KSR, which

plainly raised the bar as to what qualifies as non-obvious.[15]  Accordingly, the nature of the '265

patent, as both a business method patent and a combination of non-unique elements yielding

predictable results, is an additional factor that weighs against a finding of irreparable harm as if

the '265 patent was improvidently granted, MercExchange will not suffer <u>any</u> harm from eBay's

use of the buy-it-now functionality.[16]

 In contrast to the discussion above, this court has recognized that MercExchange's

relationship with uBid had the potential to provide significant evidence of irreparable harm; such

possibility was one of the primary justifications for reopening the record.  However, after

affording the parties the opportunity to perform additional discovery, it became evident that

---

[15] The court recognizes the potential pitfalls involved with allowing administrative proceedings to impact the court's ruling; however, such is a reality in the patent field and when the court considers a <u>prospective</u> motion in equity, it would be imprudent not to consider the ongoing reexamination. Accordingly, although the nature of the '265 patent and the Court's analysis in <u>eBay</u> and <u>KSR</u> may create a slight underlying concern, when such factors are coupled with the PTO twice declaring every claim of the '265 patent invalid as obvious, this court has a legitimate reason to question whether MercExchange will suffer irreparable harm.

[16] As noted previously, eBay now claims to have designed around the '265 patent, and although the court does not resolve such dispute nor place any weight on eBay's claims that it ceased infringing, the court acknowledges that eBay has advanced evidence indicating that it designed around the '265 patent and if successful, such design-around represents yet another factor that a page from history suggests may impact the injunction calculus. See <u>Polymer Tech.</u>, 103 F.3d at 974 (recognizing that the presumption of irreparable harm can be rebutted if the "non-movant has or <u>will soon cease</u> the allegedly infringing activities") (emphasis added). Furthermore, because it is undisputed that eBay's changes to its underlying business process have <u>virtually no impact on the user-experience</u>, if eBay has successfully designed around the '265 patent it is highly unlikely that eBay would resume infringing if an injunction does not issue as eBay's new practices would avoid infringement without negatively impacting the user. See <u>W.L. Gore & Associates, Inc. v. Garlock, Inc.</u>, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement <u>unless the evidence is very persuasive that further infringement will not take place</u>.") (emphasis added). The plausibility of eBay's purported design-around is bolstered by the fact that plaintiff's '265 patent is a business method patent that does not appear to set forth proprietary elements, but rather, relies upon a unique combination of elements present in prior art; such combination of non-unique elements suggests that it can be designed around by removing/altering some of the elements and thus avoiding the "unique" combination. Notwithstanding such facts, the court places no weight on eBay's purported design-around because MercExchange has not had the opportunity to respond to eBay's expert's reports, the complexity of the issue requires analysis that cannot be faithfully completed based upon a few pages of written argument and appended declarations, and because the court agrees with MercExchange that it should not be required to prove infringement twice in order to obtain an injunction. Although the burden plainly remains on MercExchange to prove irreparable harm, the evidence in support of eBay's purported design-around does not impact the court's analysis.

MercExchange is unable to establish irreparable harm based upon its post-trial relationship with uBid.  First, the non-exclusive license granted to uBid in 2004 indicates an adherence to, rather than a departure from, the status quo, as MercExchange willingly licensed its entire patent portfolio when approached by a market participant and potential infringer even <u>after</u> obtaining a favorable jury verdict.  Second, uBid admits that prior to reaching such agreement with MercExchange, uBid did not even evaluate the validity of the patents or how they impacted uBid, but instead chose to enter into the non-exclusive license agreement to avoid the expense of litigation; nowhere in the exhibits reflecting the 2004 negotiations was there any mention of a partnership or exclusive license (eBay Suppl. Brief Ex.5).

Similarly, the court is not persuaded that the recent unsuccessful negotiations between uBid and MercExchange regarding an exclusive license significantly alter the previous landscape as MercExchange freely admits that such concept was <u>developed by uBid</u>, suggesting that MercExchange did not deviate from its prior course of conduct of seeking royalties for its patents under the threat of litigation.[17]  Furthermore, such proposal does not appear to have proceeded very far as uBid never sought a legal evaluation as to whether MercExchange's patents were valid or how they impacted uBid even though uBid was considering selling a 25% equity stake in its company in exchange for an exclusive license to such patents.  Likewise, uBid portrayed such negotiations as "part of a process when one vets out concepts" and indicated that in "early stages of discussion" uBid faced such a high level of uncertainty that the negotiations were terminated (Merc. Suppl. Brief Ex.2, at 226).

In addition to the fact that the proposed exclusive license appears to have failed at the concept stage, uBid recognizes that such failure resulted not only from the lack of an injunction against eBay, but also from uncertainly involving the PTO reexamination as well as questions surrounding whether eBay successfully designed around the '265 patent.  <u>See</u> <u>Paice</u>, 2006 WL

---

[17] Although MercExchange did enter a limited partnership with uBid in 2004-2005 in an attempt to develop a travel website, it appears that uBid was only a 12.5% partner and that the website quickly folded (eBay Suppl. Brief Ex. 38-40).  Such limited endeavor, whose failure had nothing to do with eBay, does not alter this court's conclusion that MercExchange was not actively seeking to develop the patents-in-suit (eBay Suppl. Brief Ex.40).

2385139 at *5 ("As for Plaintiff's allegations of irreparable harm in the form of a failed licensing program, Plaintiff has not demonstrated Defendants' infringement is to blame for this failure."). As explained by uBid, "there is really not much one could build around [such] concept" until it is determined whether or not eBay continues to infringe and uBid would "have Jack" relative to what it sold off 25% of its company for if the PTO invalidated the patents (Merc. Suppl. Brief Ex.2, at 212-13, 225). Furthermore, the court recognizes the suspicious timing of such negotiations as they appear to have began within days of the Supreme Court's remand for an application of the four-factor test in the first instance; such remand occurred <u>three years</u> after MercExchange prevailed at trial. The suspicious nature of such timing is supported by emails suggesting that MercExchange acted with an eye toward the upcoming injunction dispute; for example, Robert Tomlinson, uBid's president, forwarded an email containing part of the July 2006 negotiations between uBid and MercExchange to Timothy Takesue, another uBid executive, noting: "Follow-up to my correspondence . . . appears they really want to do a deal to support their position" (eBay Suppl. Brief Ex.2). Tomlinson later admitted during a deposition that such statement refers to MercExchange's "position" in the litigation with eBay (eBay Suppl. Brief Ex.3). Similarly, in September of 2006, Tom Woolston, MercExchange's president, sent an email seeking information related to setting up "a new Merc web site that aslo [sic] dual lists ubid content" (eBay Suppl. Brief Ex.4). The reply to such email indicates that such a website could likely be constructed, but that Woolston should "do some upfront assessment of will this model work and can it make $. Otherwise, this is <u>another make Friedman semi happy</u> and piss away some $" (eBay Suppl. Brief Ex.4) (emphasis added). Accordingly, the court recognizes that MercExchange's negotiations with uBid appear just as likely to be an effort to placate the court as they do an effort to develop the '265 patent.[18]

---

[18] MercExchange's previous relationship with Aden Enterprises likewise suggests that MercExchange has attempted to disguise its true motivations to the court, claiming that a desire to commercialize guided its decisions when in reality, litigation guided such actions. For example, in support of its renewed motion for an injunction, MercExchange portrays its October 1999 partnership with Aden Enterprises as an attempt to commercialize its patents as Aden was "embarking on a major industry initiative to build and deploy Internet Markets and Auctions," (Merc. Mo. for Inj. 3); however at the time of such agreement, Aden appears to have had

In conjunction with MercExchange's attempt to spotlight its relationship with uBid, plaintiff argues that violation of the right to exclude and the potential loss of market share constitute irreparable harm.  In contrast to such assertion, in its decision remanding the injunction calculus to this court, the Supreme Court rejected the Federal Circuit's contention that the "statutory right to exclude alone justifies [a] general rule in favor of permanent injunctive relief."  eBay, 126 S. Ct. at 1840; see Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978, 983-84 (W.D. Tenn. 2006) ("A violation of the right to exclude does not compel the conclusion that a patent holder cannot be adequately compensated by remedies at law, such as monetary damages.").  Similarly, district court decisions subsequent to the Supreme Court's opinion have rejected the broad classification that direct competitors always suffer irreparable harm from infringement whereas non-competitors never suffer irreparable harm.  See Commonwealth Scientific and Indus. Research Org. v. Buffalo Tech. Inc., __ F. Supp. 2d __, 2007 WL 1739999, at *3-4 (E.D. Tex. June 15, 2007) (hereinafter CSIRO) (rejecting the defendant's claim that "since eBay district courts have typically granted injunctive relief in favor of competitors but denied injunctive relief to non-competing licensors"); Praxair, 479 F. Supp. 2d at 444 (denying an injunction to a direct competitor because the plaintiff failed to carry its burden to "iterate specific reasons why [the defendant's] infringement can not [sic] be compensated for with a money award").  Although the "quantum of evidence" required to prove irreparable harm remains unclear, id. at 443-44, the potential for loss of market share is insufficient to establish the same; otherwise, a scenario would never arise where an injunction did not issue.  See Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed. Cir. 1990) (rejecting the plaintiff's claim that the potential for lost sales alone demonstrates irreparable

---

significant financial problems and was not partnering with an eye toward development, but rather, was joining forces with MercExchange to sue eBay and others (eBay Opp. to Inj. Ex.35-39).  Tellingly, not only did MercExchange and Aden enter into a patent enforcement agreement contemplating a suit against "eBay Inc." less than three months after entering into a partnership, but Aden thereafter sued MercExchange admitting "the primary purpose of Plaintiff entering into the Sale Agreement was to enable it to obtain a share of any recovery the Defendant had in connection with any patent infringement claims [MercExchange] may have against third parties, including . . . the litigation contemplated [against eBay]" (eBay Opp. to Inj. Ex.38).

harm as "acceptance of that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances").  Accordingly, as mandated by the Supreme Court, MercExchange carries the burden to establish how and why its damages are irreparable, and considering the facts unique to this matter, it is plain that MercExchange does not iterate specific reasons why eBay's infringement cannot be adequately compensated with money.  First, MercExchange does not directly compete with eBay, has not identified market share lost to eBay, and was not precluded from entering the online auction market due to eBay's infringement as eBay's success dates back prior to its infringement.  Second, even after a favorable jury verdict, MercExchange freely chose to license its patents to a market participant in exchange for a structured royalty that placed a <u>dollar value</u> on the use of MercExchange's entire patent portfolio.  As a matter of comparison, in <u>TiVo Inc. v. EchoStar Communications Corp.</u>, 446 F. Supp. 2d 664, 669-70 (E.D. Tex. 2006), a case where an injunction was granted, not only were the plaintiff and defendant direct competitors, but the market at issue was still in its infancy, a "key consideration" in the injunction calculus as the court recognized that the plaintiff "will not have the same opportunity to capture [market share] once the market matures." <u>Id.</u> at 669-70.  In contrast to the plaintiff in <u>TiVo</u> affirmatively establishing why lost market share was so critical, in <u>Praxair</u>, the district court denied the plaintiff's motion for an injunction notwithstanding the fact that the litigants were direct competitors because the plaintiff "ha[d] not provided or described any specific sales or market data to assist the court, nor ha[d] it identified precisely what market share, revenues, and customers [it] has lost to [the defendant]." <u>Praxair</u>, 479 F. Supp. 2d at 444.  The <u>Praxair</u> court further explained that the plaintiff's "desire to become a monopoly supplier in its product's market is hardly unique, and is not conclusive evidence of any factor." <u>Id.</u>  Here, the facts are in conflict with the facts of <u>TiVo</u> as plaintiff is not a direct competitor of eBay and the online auction market is not at a "critical time" in its development as eBay appears to have been the dominant player <u>prior to</u> infringing the '265 patent.  Similarly, the fact that plaintiff does not directly compete differentiates this matter from <u>Praxair</u>; however, even if MercExchange was a direct competitor, similar to <u>Praxair</u>, an injunction is not warranted

because plaintiff has not established why its harm is irreparable.[19]  Here, MercExchange's

reliance upon conveniently timed post-remand unsuccessful negotiations with a company that

competes with eBay for only a portion of the relevant market is simply insufficient to carry

plaintiff's burden to establish irreparable harm.[20]  The court puts minimal credence in the post-

remand relationship between MercExchange and uBid because: (1) it is unclear for what portion

of the market uBid competes with eBay; (2) uBid agreed to work directly with MercExchange

"to secure [its] eBay position," as eBay is viewed as a common foe (eBay Suppl. Brief Ex.5); (3)

the failed negotiations began the same week the Supreme Court remanded this case for

application of the four-factor test–an exclusive partner to parade before the court would

undoubtedly have improved MercExchange's claim in equity; (4) uBid declined to enter into the

exclusive license agreement in part because the PTO reexamination casts doubt on the validity of

the '265 patent; (5) uBid declined to enter into an exclusive license agreement in part because it

was unclear whether in the three years subsequent to trial, eBay designed around the business

---

[19] Similar to the vague assertions of irreparable harm rejected in Praxair, here, MercExchange claims: "MercExchange, and MercExchange's licensees or potential licensees, are or aspire to be competitors of eBay . . . [but] because eBay is such a dominant presence in the marketplace, without an injunction to prevent the threat of its continued infringement, potential competitors who would be licensees of MercExchange are unlikely even to attempt to compete head-on with eBay" (Merc. Suppl. Brief 3) (emphasis added).  Such vague claims are insufficient to carry plaintiff's burden, and are similar to the generalized claims of irreparable harm previously rejected by this court.  See MercExchange, 467 F. Supp. 2d at 615 n.7  ("[T]he court does not believe that an expert primer on irreparable harm suffered by small companies whose patents are infringed offers any significant support for MercExchange's position. . . . [MercExchange's] expert declaration[s] . . . present[] an opinion painted with a very broad brush suggesting that small companies holding patents will always be irreparably harmed absent the right to exclude. . . .  [T]he court will afford little weight to exhibits espousing categorical rules or seeking to highlight [generalized] woes of the small patent holder . . . .").

[20] Unlike eBay, uBid does not offer a person-to-person network which allows individuals or unproven small businesses to sell their products, including used or "one-of-a-kind" type items, either through auctions or at a fixed price.  Rather, uBid established a business-based model that generally sells new, overstock, or refurbished brand name items, and sellers seeking to utilize uBid must not only be an established business, but must be approved by uBid as a certified merchant; according to a recent Press Release, uBid only certifies approximately one-third of all applications.  uBid Press Release, uBid.com Holdings, Inc. Announces 2,500th Certified Merchant, April 3, 2007, http://www.ubid.com/about/Press_room/ press70.pdf.  As a result, although uBid plainly competes with eBay for certain business-based sellers, there is a significant  portion of the relevant market that is turned away from uBid as both non-certified businesses and individuals cannot sell products on uBid's website.

method patent at issue; and (6) uBid never conducted a legal analysis regarding the validity of

the '265 patent or how such patent impacts uBid even though it was considering selling 25% of

its company in exchange for an exclusive license.[21]  Accordingly, although eBay is a willful

infringer of the '265 patent, MercExchange was taking few steps, if any, before trial, during trial,

or within the first three years after trial to either develop its patents or to establish a licensing

program to benefit from those with the resources to utilize the patents and compete with eBay;

MercExchange cannot now establish that it irreparably lost market share that it never possessed,

nor even pursued.

Underlying MercExchange's claim that it was unable to partner with uBid to develop its

patent is the claim that eBay is an infringing market monopolist; several post-eBay district court

cases have differentiated the facts before such courts from hypothetical fact patterns involving a

market monopolist who saturates the market with an infringing product, suggesting that

irreparable harm exists in the court-crafted hypothetical circumstances.  See, e.g., z4 Tech., 434

F. Supp. 2d at 441; CSIRO, 2007 WL 1739999, at *5.  First, such analysis is merely dicta as it is

provided in conjunction with hypothetical scenarios not before the district courts.[22]  Second, and

most importantly, such analysis appears to establish, against the direction of the Supreme Court,

a categorical rule that an infringing market monopolist is synonymous with irreparable harm.

Third, such district court cases are not controlling precedent.  This court recognizes that

saturating the market with an infringing product may in many scenarios provide the driving force

---

[21] It is also unclear whether uBid presently practices the '265 patent.  MercExchange and uBid represent to the court that uBid practices such patent, yet uBid admits to never performing a legal analysis regarding the same; in contrast, eBay argues that uBid does not practice several claims of the patent (eBay Suppl. Brief Ex.25).  If uBid does not presently practice the patent, or if it later designs around such patent, uBid can avoid paying royalties to MercExchange as uBid required the inclusion of a paragraph in the licensing agreement granting uBid the right to terminate the contract after paying the initial licensing fee of $150,000 (eBay Supp. Brief Ex.29, 33).  Inclusion of such provision lends credence to uBid's own assertion that it entered the contract without performing an evaluation of the patent's impact on uBid as it merely sought to avoid the threat of litigation.

[22] In applying the four-factor test, this court endeavors to avoid generalizations, such as indicating that irreparable harm would exist on court manufactured facts, because the court cannot foresee the complex factual and equitable factors underlying such hypothetical scenarios.

behind a finding that the patent holder suffered irreparable harm; however, on these facts, although eBay's market dominance plainly weighs in MercExchange's favor; it is insufficient to overcome the remaining factors weighing against a finding of irreparable harm.  Assuming that eBay has not designed around the '265 patent, it is apparent that eBay is the largest user of the business method covered by such patent; however, the court does not equate such fact with automatic irreparable harm merely because the court can accurately pin the label "monopolist" on eBay.  First, eBay's monopoly status differs from the hypotheticals mentioned above as eBay has not flooded the market with a unique product that consumers already purchased, or is on store shelves awaiting purchase; rather, as the already market leading auction-site, eBay began processing transactions in a manner that violated plaintiff's '265 patent when it began offering fixed priced items through a process utilizing an integrated payment processor.  Although such action constituted infringement, there is a notable difference between a business process that infringes and an infringer that saturates the market with a tangible product whereby the purchase of one company's product eliminates the demand for the other.  Here, uBid, MercExchange, or any other website could obtain market share from eBay through a competing website as buyers and sellers can switch from one to the other with little or no sunk costs; thus, past saturation does not necessarily preclude the competitor's ability to obtain market share.  Second, unlike a monopoly created by saturating the market with an infringing product, eBay's market dominance dates back prior to its infringement of the '265 patent.  See MercExchange, 275 F. Supp. 2d at 719-20 (finding that eBay's success did not arise from the use of information contained in the patents); (eBay Opp. to Inj. Ex.25) (indicating that between 1996 and 1999, both dates prior to eBay's alleged infringement, the number of auctions listed on eBay's website increased from approximately 290,000 to 29,000,000).  Similarly, eBay is unlike willful infringers that succeed by copying another's proprietary software or engineering specifications as MercExchange's patents "offer no business or engineering guidance which the defendants could copy," MercExchange, 275 F. Supp. 2d at 720; such fact and others prompted the court to previously state that although it would submit the issue of willfulness to the jury, doing so was a "bit of a

close call" (eBay Mo. to Stay Reply Ex.17).  Accordingly, both the nature of the '265 patent and the form of eBay's dominance lesson the power of the cry "monopolist," and just as proof that an infringer is a direct competitor of the patent holder is insufficient to automatically warrant an injunction, proof that an infringer is a market monopolist is likewise insufficient to warrant such automatic conclusion.[23]

In summary, although eBay is an adjudicated infringer and apparent market monopolist, the '265 patent is presently valid and enforceable, MercExchange discussed partnering with uBid, and eBay has not yet proven that it successfully designed around the '265 patent, when such facts are considered in conjunction with all of the facts of this case, the court concludes that MercExchange fails to carry its burden of establishing that eBay's infringement of the '265 patent resulted in irreparable harm to MercExchange.  Rather, MercExchange's harm, although real, appears compensable in money damages as the timing of MercExchange's post-trial discussions with uBid is suspicious, uBid's proposal failed in part based upon uncertainty unrelated to whether the court issues an injunction, and MercExchange failed to seek a preliminary injunction to prevent eBay from increasing its market share yet later attempted to use eBay's market domination against it.  Furthermore, KSR reveals the Supreme Court's reservations regarding patents similar to the '265 patent, the PTO twice issued interim actions rejecting all claims in the '265 patent as obvious prior to the issuance of KSR, and MercExchange has repeatedly, both publicly and privately, acted inconsistently with its right to exclude and indicated its desire to obtain money in exchange for eBay's right to utilize MercExchange's patents.  Such public and private actions include: previously licensing its patents to several third parties; MercExchange's website's apparent attempt to seek out new licensees; negotiations with eBay and stated willingness to license its patents to eBay;

---

[23] The court does not seek to downplay the seriousness of eBay's infringement nor suggest that MercExchange should not recover substantial monetary damages, including the very real potential for enhanced damages; however, the court flatly disagrees with the proposition that just because eBay can be accurately labeled a "market monopolist" the only equitable result is entry of a permanent injunction as there are a myriad of factors that the court must address, and when all are considered, MercExchange has not carried its burden to establish irreparable harm.

MercExchange's and its attorney's statements both before and after trial indicating that
MercExchange was not trying to shut down eBay but only sought a reasonable royalty; and
finally, MercExchange's failure to use the favorable jury verdict as a means to begin enforcing
its right to exclude, instead choosing to license its entire patent portfolio <u>subsequent to trial</u> in
exchange for future royalties.  In the end, the burden to establish irreparable harm lies with the
plaintiff, and MercExchange has failed to carry such burden.  Although it is tempting to view
eBay's status as a willfully infringing market monopolist as automatically constituting
irreparable harm, the Supreme Court has cautioned against just such conclusions, and this court
has endeavored to carefully consider each of the unique facts underlying this complex case;
careful consideration of such facts reveals that MercExchange has no reputation to protect, no
goodwill or brand recognition to protect, no customer base to retain, no well-established
licensing program to follow, and no current royalty stream to maximize.  Furthermore, it was
MercExchange that freely chose to repeatedly indicate that it was willing to <u>forgo its right to
exclude</u> and license its patents to eBay and others.  MercExchange's strongest counterpoint to
such facts is that five years after the instant suit was filed, and three years after a favorable jury
verdict, a proposed, not actual, business relationship that was not even conceptualized by
MercExchange establishes irreparable harm.  The court disagrees, and finds that the first factor
weighs against entry of an injunction.

### 2.  Adequate Remedy at Law

As recognized above, the requisite analysis for the second factor of the four-factor test
inevitably overlaps with that of the first.  On these facts, after balancing the equities, the court
concludes that damages at law constitute an adequate remedy for eBay's willful infringement.
Briefly recapping the relevant analysis, the court's conclusion that monetary damages adequately
compensate MercExchange for its injury is driven not only by the fact that MercExchange failed
to develop its patent or develop its patent through a licensing program, but also by the fact that
MercExchange has established a pattern of utilizing the '265 patent primarily as a sword to aid in
litigation or threatened litigation against infringers or potential infringers.  Although the court

recognizes that MercExchange has every right to utilize its patents in such manner, such

behavior suggests that an injunction against eBay may also be used to obtain similar ends.

Utilization of a ruling in equity as a bargaining chip suggests both that such party never deserved

a ruling in equity and that money is all that such party truly seeks, rendering monetary damages

an adequate remedy in the first instance.  See eBay, 126 S. Ct. at 1842 (Kennedy, J., concurring)

(acknowledging the blossoming industry of firms utilizing patents "primarily for obtaining

licensing fees" and recognizing that for such firms "an injunction, and the potentially serious

sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant

fees to companies that seek to buy licenses to practice the patent"); Foster v. American Mach. &

Foundry Co., 492 F.2d 1317, 1324 (2d Cir. 1974) (recognizing that equitable relief in the form of

an injunction is "not intended as a club to be wielded by a patentee to enhance his negotiating

stance").  Furthermore, MercExchange both "sought to license its patent to eBay and Half.com,"

eBay, 126 S. Ct. at 1839, and publicly indicated its willingness to license its patent portfolio to

eBay which it viewed as the natural home for its patents.  Comments to the press by

MercExchange's president and inventor of the '265 patent also indicated that "it is not

[MercExchange's] goal to enforce these patents, we want to sell off our Intellectual Property

rights."  Steiner, Patents are on the Block.  Such desire, stated publicly, is affirmed by the fact

that MercExchange is a company with two employees that doesn't even maintain permanent

office space other than such employees' home offices (eBay Supp. Brief Ex.12).  Furthermore,

MercExchange admits that subsequent to trial, it retained an outside company called Updata

Capital "to analyze [its patent portfolio] and to approach companies" in an attempt to sell off

MercExchange's patent portfolio (eBay Supp. Brief Ex.11).  Although MercExchange did not

obligate itself to sell off its portfolio through its arrangement with Updata, its post-trial attempt

to sell off its intellectual property rights, in line with its publicly stated goal of doing the same, is

proof that MercExchange is part of the "industry [that] has developed in which firms use patents

not as a basis for producing and selling goods but, instead, primarily for obtaining licensing

fees." eBay, 126 S. Ct. at 1842 (Kennedy, J., concurring).  Participation in such industry lessens

34

the impact of MercExchange's plea for equitable relief as MercExchange's actions are incongruous with its alleged harm–one cannot repeatedly attempt to sell off its intellectual rights to others, follow through by selling off such rights to several market participants, including the post-trial sale of its entire patent portfolio for a structured royalty fee, yet retain legitimacy when it claims that equity demands an injunction because money damages are insufficient.  See Paice, 2006 WL 2385139, *5 (recognizing that plaintiff's post-trial actions of extending the defendants an offer to license its technology "further demonstrates the adequacy of monetary relief from Plaintiff's point of view").

As suggested above, money damages appear adequate to compensate MercExchange not only in the eyes of this court, but also in the eyes of MercExchange as its pre-trial negotiations with eBay, post-trial statements to the public, arrangement with Updata, and sale of its entire portfolio to uBid in 2004, reveal MercExchange's consistent desire to obtain royalties in exchange for a license to its intellectual property.  See High Tech Medical, 49 F.3d at 1557 (indicating that offering a license to the defendant made it "clear" that the plaintiff was willing to forgo the right to exclude and that any injury suffered could be adequately compensated by money damages); Illinois Tool Works, 906 F.2d at 683 (highlighting the plaintiff's failure to establish why the infringer's use of the patent is "any less compensable in dollars than" utilization of the patent by prior licensees).  Furthermore, both presently, and at the time of trial, MercExchange has virtually no presence in the online auction industry and has little, if any, name recognition, customer base, market share or licensing program spurring patent development.[24]  In contrast to MercExchange's lack of market presence, because eBay is the dominant player in the online auction industry, it appears that a royalty from eBay would compensate MercExchange for the lion's share of infringing transactions, providing

---

[24]  Although MercExchange has licensed its patent to several companies, there is an unavoidable distinction between utilizing third-party licensing to bring a concept to market and strategically utilizing a patent to excise a tax from companies already participating in the market. Court ordered monetary damages are more likely to adequately compensate a patent holder in the latter scenario as such patent holder's established course of conduct is to negotiate fees and royalties for alleged infringement.

MercExchange with the monetary prize it has continually pursued through its sustained attempts to sell off its intellectual property rights.  Additionally, as noted in this court's prior opinion, eBay's willful infringement may lead to the entry of an award for enhanced damages because although the parties dispute whether eBay successfully designed around the '265 patent, it is undisputed that for at least some period of months, post verdict, eBay continued infringing the '265 patent.  Because, similar to punitive damages, enhanced damages are intended to punish/deter egregious conduct, it is possible that the monetary award ultimately collected by MercExchange will actually over compensate MercExchange for the value of its patent, thus making monetary damages more than adequate as a remedy.  Accordingly, the court finds that in this particular case, the plaintiff has an adequate remedy at law, a factor weighing against entry of an injunction.

### 3. Balance of the Hardships

The third prong, balance of the hardships, favors neither party due to the uncertainty surrounding MercExchange's ability to partner with uBid and compete in the relevant market, uncertainty involving whether eBay has designed around the '265 patent, and uncertainty involving whether such patent will survive reexamination.  On one hand, eBay is an adjudicated willful infringer of plaintiff's '265 patent, weakening eBay's claim on the Chancellor's conscience and "[o]ne who elects to [utilize a business method] found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."[25]  Windsurfing Intern. Inc. v. AMF, Inc., 782 F.2d 995, 1003 (Fed Cir. 1986).  Additionally, eBay has claimed to the public and this court that it designed around the '265 patent, and thus, taking eBay at its word, it appears that no harm would befall eBay by the issuance of an injunction.  See W.L. Gore, 842 F.2d at 1282 (quoting General Electric Co. v. New England Electric Mfg., 128 F. 738, 740 (2d Cir. 1904)) ("The argument in such

---

[25] The jury's finding of willfulness plainly weighs against eBay in the equitable calculus; however, as noted above, the court was tentative in even permitting the issue of willfulness to reach the jury and further recognized that eBay did not achieve its success through infringement and did not copy MercExchange's proprietary software or engineering specifications.

circumstances is very simple.  If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him.").

On the other hand, MercExchange appears to exist solely to license its patents to established internet companies that either infringe or are fearful of litigation if they potentially infringe; MercExchange's specialization in obtaining fees through threatened litigation suggests that it will not suffer a hardship from a similar resolution of the instant matter.[26]  Although it is evident that an established partnership between uBid and MercExchange would have increased the severity of the harm suffered by MercExchange, the reality of the matter is that such relationship does not exist and this court is not moved by conjecture regarding the potential for such relationship, especially when the timing of the negotiations between MercExchange and uBid appear suspicious.  Additionally, due to the uncertainty mentioned above, it remains unclear whether an injunction would be a significant benefit to MercExchange, other than for use as a bargaining chip, as uBid may not provide substantial compensation to MercExchange for an exclusive license because: (1) the continued validity of the '265 patent remains in doubt, especially in light of KSR; (2) eBay may have already designed around the patent, making an exclusive license virtually worthless to uBid; and (3) uBid may not currently practice the '265 patent, and even if it does, uBid's non-exclusive license permits it to quadruple its revenues before it owes any royalty to MercExchange.  As previously recognized, MercExchange has failed to point to damages to its reputation, goodwill, brand recognition, customer base or market share that were caused by eBay's infringement.  Although MercExchange argues that if eBay was forced to stop selling goods at a fixed price and customers shifted to uBid MercExchange would  begin receiving royalties, even assuming that MercExchange could ultimately collect

---

[26] For example, in 2001, GoTo.com paid MercExchange four million dollars to settle a patent infringement lawsuit in order to facilitate GoTo.com's merger with another company; MercExchange's '176 patent, the primary basis for such lawsuit, was later invalidated by the Federal Circuit.  MercExchange, 401 F.3d at 1324.  Also 2001, nearly two years after MercExchange entered into an agreement with Aden Enterprises to sue eBay, MercExchange initiated the instant litigation.  Several years later, little had changed as in 2004, during a "critical time" in uBid's relaunch, uBid chose to pay for a license to MercExchange's patent portfolio in order to avoid the threat of costly litigation.

royalties in such manner,[27] forcing eBay to pay a similar royalty for its infringing sales would result in the same end: a fixed royalty to MercExchange.

The court does not question the fact that forced royalties are an imperfect solution; however, considering the hardship to the parties based upon the instant facts, such solution appears to be the most equitable as the patent holder has repeatedly illustrated that a royalty from market participants, including eBay, is what it truly seeks.  If a royalty is what MercExchange seeks, and eBay is both the dominant player in the market and the "natural home" for the patents, it appears that the instant dispute boils down to money.  See Paice, 2006 WL 2385139, at *5 n.3 (recognizing that although "monetary relief could result in lower licensing rates than Plaintiff would desire," whereas an injunction would give plaintiff "a more impressive bargaining tool," such considerations "do[] not replace the four-factor test that must be satisfied for equitable relief").  Because MercExchange has repeatedly acted inconsistently with the right to exclude, eBay's infringement does not create the type of hardship on the patent holder that suggests that relief in equity is necessary.  See Foster, 492 F.2d at 1319, 1324 (recognizing that preventing a foundry from practicing a welding patent when the individual patent holder, a patent solicitor and member of the Bar of Pennsylvania and New York, had "never engaged in any manufacturing or other business connected with the patent in suit" may impose a hardship on the infringer without "any concomitant benefit to the patentee," whereas although granting the plaintiff a compulsory royalty "is to give him half a loaf," in the circumstances, such remedy was the most equitable solution).

In addition to the analysis above, in fashioning prospective equitable relief, the court must also consider the potential for eBay to suffer irreparable harm if enjoined from utilizing the buy-it-now feature on its website should the PTO later invalidate the '265 patent.  The combination of the Supreme Court's KSR opinion with the PTO's pre-KSR interim rejections of all claims of the '265 patent suggest that the PTO's final action may reach the same conclusion.

---

[27] There is no guarantee that fixed price sellers would shift to uBid, especially with more readily known websites that now sell both used and overstocked goods, such as Amazon.com.

In Bausch & Lomb Inc. v. Alcon Laboratories, Inc., 914 F. Supp. 951, 952-53 (W.D.N.Y. 1996), prior to trial, the court chose to stay the case based upon an ongoing PTO reexamination, in part because the court recognized the potential for irreparable harm if the alleged infringer was subject to a final verdict awarding damages and the PTO thereafter invalidated the patent.  Here, eBay already faces such risk, as does every alleged infringer when a stay is denied notwithstanding the fact that PTO reexaminations are ongoing;[28] however, the far more substantial risk of harm to eBay is the  potential for eBay to lose customers if forced to remove the buy-it-now option from its website, potentially impeding millions of transactions, only to later discover that the '265 patent was never valid and that eBay always had the legal right to utilize such functionality.  Although the court denied eBay's motion to stay the injunction determination, the PTO reexamination nevertheless impacts the equitable calculus of the four-factor test.[29]  With the future so speculative in this continually-developing, complex scenario, the court cannot confidently determine in which party's favor the balance of hardships tips.

### 4. Public Interest

The final prong, the public interest, weighs slightly against entry of an injunction.  In conducting the public interest analysis, the court is again mindful of the Supreme Court's caution against categorical rules, and this court heeds such warning, endeavoring to avoid relying on or unintentionally suggesting the existence of categorical rules.  That being said, both common sense and caselaw suggest that "[t]he public-interest factor often favors the patentee, given the public's interest in maintaining the integrity of the patent system."  Odetics, 14 F. Supp. 2d at 795; see TiVo, 446 F. Supp. 2d at 670 ("The public has an interest in maintaining a strong patent system.").  However, while preserving the integrity of the patent system will always be a consideration in the public interest analysis, it cannot be allowed to dominate such analysis lest a

---

[28] The above analysis is not intended at this time to suggest that the court believes it would be inequitable for eBay to pay the damages awarded for infringement of the '265 patent should such patent ultimately be invalidated.

[29] As the Chief Justice posited during oral argument, if the reexamination can act as a basis for staying an injunction, it can also be a "a basis not to issue [an injunction] in the first place" (eBay Mo. to Stay Ex.30).

presumption results.  Accordingly, the court considers the type of patent involved, the impact on

the market, the impact on the patent system, and any other factor that may impact the public at

large and concludes that, on these facts, the public interest weighs against the entry of an

injunction.

First, considering the nature of the patent involved, the '265 patent is a business method

patent that appears to rely upon combining non-unique elements into a unique combination.  The

questionable nature of many business method patents has both forced the PTO to implement a

second level review policy, see, e.g., Testimony of Q. Todd Dickinson, Tr. 1203:8-1204:22, and

prompted words of caution by a four member panel of the Supreme Court.  See eBay, 126 S. Ct.

at 1842 (Kennedy, J., concurring) (recognizing that the "potential vagueness and suspect validity

of some [business method patents] may affect the calculus under the four-factor test").

Furthermore, the validity of patents constituting nothing more than a combination of elements

depicted in prior art producing a predictable result was recently called into question by a

unanimous Supreme Court in KSR, 127 S. Ct. at 1739.  Here, although the '265 patent is

presently valid and enforceable, the court must recognize that such patent never underwent a

"second look" review by the PTO and that interim findings from the PTO during reexamination

have twice indicated that every claim in the '265 patent is invalid as obvious.  Although this

court does not ground its opinion in speculation regarding the final outcome of such

reexamination, it would be futile to attempt to craft forward looking equitable relief without

considering foreseeable future events.  See Polymer Tech., 103 F.3d at 974 (recognizing that

courts should consider if the defendant "has or will soon cease the allegedly infringing

activities") (emphasis added).  Thus, the court deems it proper to consider the nature of the

patent, as well as repeated indications from the PTO that such patent is invalid as obvious, when

considering the public's interest in protecting the patent holder through injunctive relief.

Second, considering the patent's impact on the public, the public's interest in a strong

patent system, and the position of the litigants and their prior actions, the court finds that

although the public health and welfare is plainly not at issue, the public interest nevertheless

favors damages at law rather than an injunction.  Courts have both granted and denied injunctions when infringing products are considered necessary to the public, such as medical devices.  Compare Datascope Corp. v. Kontron, Inc., 786 F.2d 398, 401 (Fed. Cir. 1986) (affirming denial of a preliminary injunction involving alleged infringement of a patent covering a catheter used during heart procedures); with Eli Lilly & Co. v. Medtronic, 7 U.S.P.Q.2d 1439, 1445 (E.D. Pa. 1988) (concluding that because Congress created a patent system permitting the "inventors of novel, useful and non-obvious products short-term exclusivity on such products," the public interest weighs in favor of the right to exclude even for patents on lifesaving products such as heart defibrillators).  Here, although such concerns plainly do not exist, eBay is a multi-billion dollar corporation whose online marketplace brings together tens of millions of buyers and sellers around the world and eBay unquestionably has a substantial impact on the United States' economy; furthermore, eBay's success pre-dates its infringement.  In contrast, MercExchange is a company with two employees that work out of their homes and appear to specialize in litigation and obtaining royalties for licenses based on the threat of litigation. Although the public plainly benefits from a strong patent system and protection from an infringer may be vital when a patent held by a small patent holder is infringed upon by a multi-billion dollar corporation such as eBay, the strongest arguments in equity exist when such small patent holder utilizes its patent to benefit the public; that is, either seeks to develop the patent on its own or develop the patent through licensing agreements.  Similarly, equity may favor a patent holder that seeks to defend its right to exclude and prevent development of its patent by others. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405 (1908).  In contrast, here, MercExchange has illustrated its intention to do neither, but instead repeatedly chose to license its patents to market participants allegedly utilizing such patents, including licensing its entire patent portfolio subsequent to obtaining a favorable jury verdict.[30]  MercExchange's utilization

---

[30] MercExchange's likewise exhibited a lack of development subsequent to Altitude Capital's post-trial investment of $6.25 million in MercExchange; Altitude Capital invested such funds to purchase an interest in MercExchange's litigation recovery.  Specifically, $4 million of such investment was distributed to MercExchange's three members, and a large portion of the remainder was used to fund litigation or set aside as a reserve to pay MercExchange's two

of its patent in a manner inconsistent with its right to exclude indicates that a "strong patent system" need not rescue MercExchange through equitable measures as MercExchange's harm can be adequately compensated through damages at law.  Although monetary relief will be obtained through the court rather than through a negotiated license agreement, in the end, MercExchange receives what it has consistently sought: money.  See Paice, 2006 WL 2385139, at *6 ("Relief in non-injunctive form also serves this public interest.").  The court's conclusion that the public interest favors damages at law on these facts does not equate with a general rule that the public interest never favors entering an injunction if a plaintiff previously licensed its patent; rather, MercExchange has repeatedly sought to license its patent to market participants through litigation and threatened litigation, freely chose to license its entire patent portfolio subsequent to a favorable jury verdict, presently maintains a website that appears to seek additional licensees, and has both announced to the public its desire to sell off its intellectual property rights and hired a company to help effectuate such goal.

"[A] page of history is worth a volume of logic," eBay, 126 S. Ct. at 1841 (Roberts, C.J., concurring) (quoting New York Trust Co. v. Eisner, 256 U.S. 345, 349 (1921)), whether the court is considering the injunction calculus, the likelihood that a criminal defendant with five prior felonies will be a recidivist, or whether a non-practicing patent holder with a track record for pursing monetary recovery through litigation is merely seeking an injunction as a bargaining chip to increase the bottom line.  The factual history of this matter indicates that MercExchange has never sought to defend its right to exclude; to put credence in such claim at this late stage would not serve equity nor the public interest.  Tellingly, in the wake of a favorable jury verdict MercExchange had the perfect opportunity to change course and seek to develop its patent or at a minimum defend its right to exclude; instead, MercExchange chose to publicly declare that its

---

employees salaries of $240,000 a year; little appears to have been devoted to developing the patents (eBay Suppl. Brief Ex.12-16).  Although the court accepts MercExchange's sensible explanation that such investment, although substantial, was insufficient to enter the market as a freestanding competitor to eBay, it nevertheless appears to represent a bypassed opportunity to attempt to develop MercExchange's patents.  Additionally, such investment precludes MercExchange from arguing that its two employee company is on the brink of financial ruin.

goal was to sell off its intellectual property rights. Thereafter, MercExchange followed through on such statement both by hiring Updata Capital to pursue precisely such end and by granting uBid a non-exclusive license in its current and pending patents. Whatever the motivation for such decisions, MercExchange freely chose to follow such course, and the public interest favors holding MercExchange accountable for its actions and its words; ignoring MercExchange's past actions would encourage future litigants to be less than forthright with the court, advancing whatever arguments best support a specific motion, no matter their accuracy nor contradiction of prior findings by the court. Here, eBay has infringed, has been ordered to pay tens of millions of dollars for such infringement, and still faces an accounting for post-trial infringement, including the very real potential for enhanced damages. The patent system has therefore protected the right that MercExchange has always sought to defend through its patent, the right to use such patent to exact fees, royalties and damages through litigation and threatened litigation.

Third, the court has considered the behavior of the litigants throughout trial and subsequent to trial, as plaintiff and defendants have both advanced allegations of the others' misconduct, allegedly amounting to "unclean hands." The court previously recognized such claims to be somewhat tangential to the primary issues before the court, the propriety of a stay and an injunction; however, the court acknowledged that perpetrating a fraud on the court or knowingly violating a protective order could certainly impact the equitable calculus. Addressing the specifics of the unclean hands allegations, eBay alleges both that MercExchange's experts violated the court's protective order by improperly participating in the PTO reexamination proceedings and, more concerning, that plaintiff's trial counsel improperly participated in reexamination proceedings. In contrast, MercExchange argues that eBay perpetrated a fraud on the court by introducing the Newman video as a trial exhibit representing prior art when eBay was informed prior to trial that such exhibit, which documented Kenneth Nahan's patent, was maintained as confidential during the pertinent time period and therefore was not in the public domain. Additionally, MercExchange alleges that eBay has repeatedly interfered with the ex parte PTO reexamination process by making frequent submissions to the PTO and further claims

43

that eBay's status as a willful infringer should prevent eBay from obtaining relief in equity.

After considering the claims of inequitable conduct, including several pending motions detailing such allegations, the court concludes that the public interest favors neither party with respect to the unclean hands arguments.  Frankly, it appears to the court that neither side has particularly clean hands as both have engaged in litigation tactics that at times may have crossed the line; however, neither side has successful proven the other to be unworthy of a ruling in equity due to unclean hands.  With respect to eBay's allegations of misconduct, MercExchange's trial counsel's assistance to a trial expert in the preparation of declarations to be submitted to the PTO may technically be in violation of the protective order, depending on the breadth given to the term "patent prosecution activities."  Tellingly, as discussed at length in this court's prior order addressing the same declarations,[31] the court views the goal of the protective order as not only preventing intentional utilization of confidential information, an unquestionably unethical act, but also to avoid <u>unintentional reliance upon such information</u>, as such reliance can at times be impossible to perceive by the individual so relying.  Here, although MercExchange's trial counsel viewed scores of documents containing eBay's confidential information and should likely have had no involvement with assisting experts with PTO submissions, the declarations at issue relate to prior art, information that is in the public domain, making eBay's confidential information irrelevant to such declarations.  Thus, although MercExchange's counsel failed to entirely segregate itself from the ongoing reexaminations, the challenged involvement appears to have been an unintentional technical violation of the protective order and is insufficient to establish that MercExchange acted inequitably.

As to MercExchange's misconduct allegations, eBay's trial counsel, who likewise had access to the opponent's confidential information, may have also been improperly involved in

---

[31] eBay previously filed a motion alleging that MercExchange's trial expert, Dr. Alfred Weaver, was in violation of the protective order by submitting three declarations to the PTO. The court resolved such claim, finding that the submissions did not violate the protective order; however, the court modified the protective order to prohibit future involvement of trial experts in the reexamination proceedings.  <u>MercExchange</u>, 467 F. Supp. 2d at 621-26.  eBay now contends that MercExchange's trial counsel's assistance to Dr. Weaver in the preparation of the same declarations constitutes a violation of the protective order and inequitable conduct.

the reexamination process by making several submissions to the PTO. Whether such submissions were limited to letters urging certain action, or whether eBay's counsel actively aided eBay's in-house counsel in the alleged submission of trial transcripts and other exhibits to the PTO is unclear; however, it is clear that eBay's trial counsel, like MercExchange's, was more involved in the reexamination than anticipated by the court as not only is eBay's counsel's conduct similarly governed by the protective order, but the reexamination requester is barred from involvement in the reexamination by regulation. 37 C.F.R. § 1.550(g). Thus, eBay, the party that filed multiple motions alleging violations of the protective order may have likewise technically violated the protective order; however, similar to MercExchange's counsel's actions, such violation appears to flow from an aggressive tack at the contentious dispute rather than a knowing violation of the protective order. Additionally, the court does not find that eBay has unclean hands due to the submission of the Newman video as a trial exhibit as MercExchange has failed to advance sufficient evidence establishing the alleged misconduct; tellingly, Kenneth Nahan's declaration, MercExchange's primary evidence purportedly supporting its allegation of inequitable conduct, was withdrawn due to Mr. Nahan's impaired mental capacity.

Accordingly, the court concludes that the unclean hands allegations, offered from both sides and challenging activities dating back several years, are yet another example of the contentious nature of this litigation as each party looks for any opportunity whatsoever to gain an advantage on the other. As recognized by MercExchange's trial counsel during oral argument on the motion to stay and motion for an injunction, "there is no end to hypocrisy on both sides in litigation, and that's true in every case, and it's certainly not untrue in this case" (Transcript Dkt. 691, at 129). Thus, the court gives no weight to the allegations discussed above when conducting the equitable calculus. The court does, however, consider eBay's status as a <u>willful</u> infringer of the '265 patent and such status plainly favors MercExchange when conducting an equitable balancing in consideration of the public interest. That being said, the court ultimately concludes that such willful infringement is insufficient to tip the public interest in MercExchange's favor because: (1) as noted previously, the court views the willfulness issue to

be a close call; (2) enhanced damages will suffice to punish such borderline willfulness; and (3) MercExchange's established history of suing market participants to exact a royalty, sustained lack of interest in defending its right to exclude, and repeated attempts to sell off its intellectual property rights, create a strong public interest in holding MercExchange accountable for its past actions and words, including <u>words to the public</u>.  See <u>Odetics</u>, 14 F .Supp. 2d at 796 n.28, 797 (rejecting the defendants' arguments regarding the propriety of an injunction as both inconsistent with arguments advanced at trial and flatly contradicted by one of the defendant's press releases).  In reaching such conclusion, the court rejects the general rule that the public interest favors an injunction whenever there is a finding of wilfulness, as even when faced with a willful infringer the court must consider the factual history of the case, including the patent holders' prior acts, as well as the parties' relative positions in the market, the nature of the patent at issue, and its impact on the public.  Because the public interest would be disserved by permitting litigants to declare one reality to the jury and the press, and another to the court on post-trial motions, and because MercExchange has repeatedly acted inconsistently with its right to exclude, the public interest factor weighs against entry of an injunction.

### C.  Summary of Application of the Four-Factor Test in the First Instance

In summary, the court finds that MercExchange has not established that it will suffer irreparable harm absent an injunction.  Although the Supreme Court rejected the categorical rule that a patent holder's willingness to license its patents <u>precludes</u> it from establishing irreparable harm, the Court did not state that such willingness was no longer a significant factor in the calculus, especially when prior licenses were not aimed at developing the patent.  Considering past precedent as a guide in applying the four-factor test, as encouraged by the Chief Justice, although it is plain that injunctions were historically granted upon a finding of validity and infringement, one of the "historical" scenarios where infringers succeeded in overcoming a finding of irreparable harm was when the patent holder had engaged in a pattern of licensing its patents that was inconsistent with defending its right to exclude.  See <u>Polymer Tech.</u>, 103 F.3d at 975 (indicating that irreparable harm is <u>clearly</u> negated by a finding that "the patentee was

willing to forgo its right to exclude by licensing the patent").  Such analysis is in accord with the
traditional four-factor test because freely issuing licenses creates difficultly establishing why
utilization of the patent by the infringer is "any less compensable in dollars than" utilization of
the patent by the prior licensees.  Illinois Tool Works, 906 F.2d at 683.  Here, MercExchange not
only has a track record for exacting a tax for utilizing its patents from market participants, but it
publicly declared its desire to sell off its intellectual property rights, attempted to license its
patents to eBay, and again acted inconsistently with its right to exclude after a favorable jury
verdict by freely licensing its entire patent portfolio to a market participant that approached it to
avoid the costs of litigation.  Furthermore, MercExchange has no reputation or branding to
protect, no customer base or goodwill to defend, and no present royalty stream to maximize.
Additionally, the business method patent at issue never underwent a second look review and
there is a distinct possibility that the '265 patent will be invalidated through reexamination as
two PTO interim office actions rejected all claims of the '265 as obvious; such interim actions
were issued prior to the Supreme Court's KSR opinion which cast further doubt on the continued
validity of the '265 patent.  The record also indicates that MercExchange has often acted with an
eye toward litigation, and emails and other evidence suggest that MercExchange may have
attempted to generate evidence of irreparable harm in order to advance its litigation position.
Considering all such factors, and others discussed above, MercExchange has simply failed to
establish irreparable harm or that damages at law will not adequately compensate it for eBay's
infringement.  Additionally, after considering the balance of the harms, favoring neither party,
and the public interest, favoring denial of plaintiff's motion for an injunction, the court
concludes that an injunction is not warranted.  Accordingly, plaintiff's renewed motion for entry
of a permanent injunction is denied.

## V.  Conclusion

For the reasons discussed above, the court **ORDERS** that the proceedings involving the
'265 patent be **SEVERED** from those involving the '051 patent.  Addressing each patent dispute
separately, the court **DENIES** defendants' motion to stay the '265 proceedings and **GRANTS**

defendants' motion to stay the '051 proceedings.  As to the stay of the '051 proceedings, counsel is **INSTRUCTED** to provide the court with a status report every 120 days regarding the developments in the PTO reexamination of the '051 patent.

After application of the four-factor equitable test in the first instance, the court **DENIES** plaintiff's renewed motion for entry of a permanent injunction.  As suggested from the discussion above, the court also **DENIES** eBay's motion for relief against willful contempt of the protective order (Dkt. 672); however, the court expects that both eBay and MercExchange's trial counsel will not have further questionable involvement with the PTO reexamination. Additionally, the court **DENIES** and deems **MOOT** MercExchange's motion to enforce the court's December 18, 2006 order (Dkt. 645), eBay's motion to preclude evidence in violation of eBay's due process rights (Dkt. 648), and eBay's motion to expedite consideration of its motion to compel discovery and the related motion to compel discovery (Dkt. 651 & 652), as the limited discovery period is no longer open and the necessary discovery disputes were previously resolved by a Magistrate Judge.  eBay's motion to enforce the protective order (Dkt. 643) was granted in part and denied in part pursuant to this court's December 18, 2006 order and is therefore no longer pending before the court.

Although the court finds that traditional equitable principles do not warrant entry of a permanent injunction regarding the '265 patent, as such patent remains valid and enforceable and the jury verdict and damages award in favor of MercExchange were affirmed by the Federal Circuit, the court will now entertain appropriate motions regarding the post-appeal issues in the '265 patent dispute, including MercExchange's anticipated motion for entry of a final and enforceable judgment and motion for an accounting.  The court is in a position to entertain such motions as the Federal Circuit affirmed both the finding of infringement and the damage award for the '265 patent and eBay did not raise such issues before the Supreme Court.  Rather, the sole issue presented to the Court by eBay was: "Whether the Federal Circuit erred in setting forth a general rule in patent cases that a district court must, absent exceptional circumstances, issue a permanent injunction after a finding of infringement."  Petition for a Writ of Certiorari, <u>eBay</u>,

126 S.Ct. 1837, <u>available at</u> 2005 WL 1801263.  In granting the petition for writ of certiorari as to "the Question presented by the petition," the Supreme Court also directed the parties to brief and argue: "Whether this Court should reconsider its precedents, including <u>Continental Paper Bag Co. v. Eastern Paper Bag Co.</u>, 210 U.S. 405 (1908), on when it is appropriate to grant an injunction against a patent infringer."  <u>eBay Inc. v. MercExchange, L.L.C.</u>, 126 S.Ct. 733 (2005).  Tellingly, both the question presented by eBay and the additional issue raised by the Court presume a finding of infringement.  Accordingly, the Supreme Court's opinion rejecting the Federal Circuit's injunction standard and vacating the portion of the Federal Circuit's opinion ordering that an injunction be entered has no impact on the affirmed jury verdict and damage award for the '265 patent, which appears to be final.  The court will therefore entertain appropriate post-affirmance motions in the '265 patent infringement action.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

**IT IS SO ORDERED.**


                                         /s/
                                   Jerome B. Friedman
                         UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July  27 , 2007